# United States Tax Court

T.C. Memo. 2022-80

DONALD W. THOMPSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8792-20.                                     Filed July 20, 2022.

————

*Vivian D. Hoard* and *Elizabeth K. Blickley*, for petitioner.

*Amber B. Martin*, *Daniel K. McClendon*, and *John T. Arthur*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves charitable contribution deductions claimed by petitioner for a conservation easement donation. The Internal Revenue Service (IRS or respondent) issued petitioner a notice of deficiency disallowing these deductions and determining accuracy-related penalties under section 6662(a).[1] In his Answer respondent asserted additional penalties for substantial valuation misstatement under section 6662(e) and for gross valuation misstatement under section 6662(h). Petitioner timely petitioned this Court for redetermination.

Currently before the Court is respondent's Motion for Partial Summary Judgment. Respondent contends that the deductions were

———

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] properly disallowed because the easement's conservation purpose was not "protected in perpetuity." *See* § 170(h)(5)(A). Separately, respondent contends that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties. We will deny the Motion on the section 170(h)(5)(A) question but grant it with respect to section 6751(b)(1).

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Georgia when he petitioned this Court.

Petitioner is the sole member of DWT Properties, LLC (DWT). DWT is a single-member limited liability company organized under the laws of South Carolina. At all relevant times DWT, for Federal income tax purposes, was disregarded as an entity separate from its owner. *See* Treas. Reg. § 301.7701-3(b)(1)(ii).

On June 28, 2012, DWT acquired roughly 176 acres of land (Property) in Edgefield County, South Carolina. DWT's acquisition cost for the Property was $1,234,597. On November 5, 2013, petitioner secured an appraisal valuing the Property at $10,989,000; he thus took the position that the Property had appreciated in value by 890% in 16 months. On November 18, 2013, DWT granted to the City of North Augusta (City) a conservation easement over the Property.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his 2013 tax year. On that return he reported a charitable contribution deduction of $10,800,000 for DWT's donation of the conservation easement. He claimed carryforward deductions of $1,134,594, $1,161,900, and $1,246,172, respectively, on his 2016–2018 tax returns.[2]

The easement deed recites the conservation purposes and generally prohibits commercial or residential development. But it reserves certain rights to DWT, including the rights to build a golf course and hold golf tournaments on the Property. In connection with the golf course DWT reserved the rights to build food concession stands, rest

---

[2] Because DWT is disregarded for Federal income tax purposes, petitioner claimed the deductions directly.

[*3] stations, rain shelters, paths for golf carts, and other structures "customary and beneficial to the operation of the Golf Course."

Article 6.5 expresses the parties' intention that "no change in conditions . . . will at any time or in any event result in the extinguishment of any of the covenants, restrictions or easements" specified in the deed. However, if a change in conditions nevertheless gives rise to the extinguishment of the easement, then on any subsequent sale or conversion the City is entitled to a portion of the "proceeds of sale." The deed defines "proceeds of sale" as the consideration received in exchange for the Property, minus any "amount attributable to the improvements constructed upon the [Property]" by the grantor.

The IRS selected petitioner's 2016–2018 returns for examination and assigned the case to Revenue Agent (RA) Bernard Dawson.[3] In November 2019, as the examination neared completion, RA Dawson recommended assertion of penalties against petitioner under section 6662(a) and (b)(1) and (2) for negligence or substantial understatements of income tax. His recommendations to this effect were set forth in a civil penalty approval form. RA Dawson's acting group manager, Amber Carper, nee Pryor, signed the form on November 25, 2019.

Later that day RA Dawson sent petitioner Form 4549, Income Tax Examination Changes, for discussion purposes. The Form 4549 was a substantially complete draft, with "lead sheets" discussing the charitable contribution deductions and the understatement penalties that were under consideration. Roughly three weeks later, on December 10, 2019, RA Dawson telephoned petitioner's representative to discuss the case. Petitioner's representative stated that petitioner would not agree to the proposed adjustments. RA Dawson offered a conference with his acting group manager, but petitioner's representative declined that offer.

After the call RA Dawson prepared, and his acting group manager signed, a Letter 950. This letter transmitted "an examination report . . . showing proposed changes" for 2016–2018 and explaining petitioner's right to request a conference with the IRS Independent Office of Appeals. The examination report was materially identical to the Form 4549 that RA Dawson had mailed to petitioner on November 25, 2019.

---

[3] The record does not establish whether the IRS challenged the charitable contribution deduction claimed for the easement on petitioner's 2013 return.

[*4]  At some point thereafter, RA Dawson's acting group manager married and changed her surname to Carper.  On January 22, 2020, she signed another copy of the civil penalty approval form, affixing her digital signature as "Amber R. Carper."  Ms. Carper has submitted a declaration confirming that she supervised RA Dawson's work during the examination and that she signed both the November 25, 2019, and the January 22, 2020, copies of the penalty approval form.

On March 20, 2020, the IRS issued petitioner a notice of deficiency disallowing the charitable contribution deductions and determining for 2016–2018 deficiencies of $449,299, $460,112, and $461,083, respectively.  The notice also determined a penalty for each year under section 6662(a) and (b)(1) and (2).  Petitioner timely petitioned this Court for redetermination.

In his Answer respondent asserted additional penalties for substantial valuation misstatement under section 6662(e) and for gross valuation misstatement under section 6662(h).  The Answer was signed by Christopher D. Bradley, an IRS attorney in Atlanta Group 1, and by John T. Arthur, the Associate Area Counsel for Atlanta Group 1.  In the Answer respondent represented that Mr. Bradley "made an initial determination to assert" these penalties and that "this determination was personally approved, in writing, by [his] immediate supervisor, [Mr.] Arthur, by virtue of [Mr.] Arthur's signature on this pleading."

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  *See* Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520.  In deciding whether to grant partial summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

**[\*5]** II.    *Analysis*

    A.    *"Protected in Perpetuity"*

The Internal Revenue Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property." § 170(f)(3)(A). But there is an exception for a "qualified conservation contribution." § 170(f)(3)(B)(iii), (h)(1). For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity." § 170(h)(1)(C), (5)(A).

In 1986 the Department of the Treasury issued final rules for determining whether this "protected in perpetuity" requirement is met. Of importance here are the rules governing the mandatory division of proceeds in the event the property is sold following extinguishment of the easement. *See* Treas. Reg. § 1.170A-14(g)(6). The regulations recognize that "a subsequent unexpected change in the conditions surrounding the [donated] property . . . can make impossible or impractical the continued use of the property for conservation purposes." *Id.* subdiv. (i). Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable grantee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. *Ibid.* In effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes." § 170(h)(5)(A).

In *Coal Property Holdings, LLC v. Commissioner*, 153 T.C. 126, 137–40 (2019), we held that a deed of easement failed to satisfy these requirements where the donee's share of post-extinguishment sale proceeds was improperly reduced by carve-outs for "donor improvements." *See also TOT Prop. Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1363 (11th Cir. 2021); *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 207–08 (5th Cir. 2018). Respondent contends that the deed in this case has this defect.

Petitioner contends that the Motion should be denied in the light of *Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89. In *Hewitt* the U.S. Court of Appeals for the Eleventh Circuit held that "the Commissioner's interpretation of

[*6] § 1.170A-14(g)(6)(ii), to disallow the subtraction of the value of post-donation improvements . . . , is arbitrary and capricious and therefore invalid under the [Administrative Procedure Act's] procedural requirements." *Id.* at 1353. *Contra Oakbrook Land Holdings, LLC v. Commissioner*, 28 F.4th 700, 717–18 (6th Cir. 2022) (disagreeing with *Hewitt* and finding the regulation to be valid), *aff'g* 154 T.C. 180 (2020).

Absent stipulation to the contrary, appeal of this case would lie to the Eleventh Circuit. *See* § 7482(b)(1)(A). We are therefore obligated to follow the law as established by the Eleventh Circuit on this question. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). We will accordingly deny respondent's Motion for Partial Summary Judgment on this point, without prejudice to his resubmission of the arguments set forth therein should subsequent developments warrant that action.

B.  *Penalty Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." As a threshold matter, respondent must show that he complied with section 6751(b)(1). *See Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017) (ruling that "compliance with § 6751(b) is part of the Commissioner's burden of production" under section 7491(c)), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

In *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020), we explained that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] [the taxpayer] that [it] ha[s] completed its work and . . . ha[s] made a definite decision to assert penalties." Once the Commissioner introduces evidence sufficient to show written supervisory approval, the burden shifts to the taxpayer to show that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the taxpayer] before the proffered approval" was secured. *Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

1.  *Section 6662(a) Penalties*

Respondent has produced a copy of the civil penalty approval form by which RA Dawson recommended assertion of substantial understatement penalties against petitioner. RA Dawson's immediate supervisor, Ms. Carper, signed the penalty approval form on November 25,

[*7] 2019.[4]  The Form 4549 notifying petitioner of the proposed penalties was issued later that day.  The Letter 950 with the enclosed examination report was issued on December 10, 2019, and the notice of deficiency was issued on March 20, 2020.  Because RA Dawson secured supervisory approval from Ms. Carper before any of those communications to petitioner occurred, the approval was timely.  *See ibid.*[5]

Petitioner does not allege that the IRS formally communicated to him, before November 25, 2019, its decision to assert penalties under section 6662(a).  Rather, petitioner argues that "respondent did not make any effort to authenticate the documents attached to his motion," including the civil penalty approval forms and the sworn declaration from Ms. Carper.  Petitioner asserts that the relevant facts must be established at trial.

We are not persuaded.  The civil penalty approval forms identify RA Dawson as the examining agent who made the initial determination to assert the section 6662(a) penalties and Ms. Carper as his acting group manager.  We have repeatedly held that a "group manager's signature on the Civil Penalty Approval Form is sufficient to satisfy the statutory requirements." *Belair Woods*, 154 T.C. at 17.  Moreover, Ms. Carper has supplied a declaration, under penalties of perjury, averring: "In my role as acting group manager, I reviewed Mr. Dawson's work, including his revenue agent's report and work papers from the examination." *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021)

---

[4] Ms. Carper signed that form using her maiden name, Amber Pryor.  She later married and changed her surname to Carper.  On January 22, 2020, adopting a belt-and-suspenders approach, she signed another copy of the civil penalty approval form using her married name.  Petitioner does not dispute that Ms. Carper in fact signed both copies of the form.

[5] Because RA Dawson secured supervisory approval on November 25, 2019, we need not decide whether the "initial determination" to assert penalties was embodied in the Form 4549, the Letter 950, or the notice of deficiency.  In *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020), the U.S. Court of Appeals for the Ninth Circuit considered the timeline for obtaining supervisory approval of "assessable penalties," which are not subject to deficiency procedures.  The court held that, for an assessable penalty, supervisory approval is timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment." *Id.* at 1074.  The court suggested that, in a deficiency case such as this, the deadline for securing supervisory approval would be the issuance of the notice of deficiency. *Id.* at 1071 n.4.  If that analysis were adopted here, supervisory approval of the penalties was clearly timely: Approval was secured in November 2019, and the notice of deficiency was not issued until March 2020.

[*8] (holding that the "immediate supervisor" is "the person who supervises the agent's substantive work on an examination").

Petitioner nonetheless asserts that he should have the opportunity to cross-examine RA Dawson and Ms. Carper at trial. We disagree. We have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g., Sand Inv. Co.*, 157 T.C. at 137–44; *Morgan Run Partners, LLC v. Commissioner*, T.C. Memo. 2022-61; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2. And in so doing, we have routinely rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement").

To defeat a motion for summary judgment, petitioner "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d). Petitioner has set forth no "specific facts" to dispute the existence or timeliness of Ms. Carper's signature. We thus hold that the section 6662(a) penalties received the requisite supervisory approval.

### 2. *Section 6662(e) and (h) Penalties*

In his Answer respondent asserted additional penalties for gross valuation misstatement under section 6662(h) and (in the alternative) for substantial valuation misstatement under section 6662(e). Mr. Bradley signed the Answer as "Senior Attorney (Atlanta, Group 1)," and Mr. Arthur signed the Answer as "Associate Area Counsel (Atlanta, Group 1)." Mr. Arthur has submitted a declaration confirming that, as the Associate Area Counsel for Atlanta Group 1, he regularly reviewed Mr. Bradley's work and was his "immediate supervisor" when the Answer was filed.

Petitioner does not contend that the IRS formally communicated to him, before filing the Answer, its decision to assert these additional penalties. Instead petitioner asserts that "respondent has made no attempt to value the easement." He argues that the section 6662(e) and (h) penalties, which involve valuation questions, are "inappropriate and cannot have been the result of meaningful review." Specifically, petitioner contends that Mr. Arthur and Ms. Carper were incapable of meaningful review because they "lacked real estate expertise" and did

[*9] not seek advice from a real estate expert regarding valuation of the Property.

Petitioner misapprehends the requirements of section 6751(b). That provision is captioned "Approval of Assessment," not "Explanation of Assessment." *See Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, at *7. As we have said before: "The written supervisory approval requirement . . . requires just that: written supervisory approval." *Ibid.* (quoting *Raifman*, 116 T.C.M. (CCH) at 28).

We have repeatedly rejected any suggestion that a penalty approval form or other document must "demonstrate the depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17. Indeed, because petitioner's claimed deductions presupposed that the Property had appreciated by 890% in just over a year, the IRS did not need a formal appraisal to support its determination that a valuation misstatement likely existed. In any event we have held that a supervising attorney's signature on an answer, without more, is sufficient to satisfy the statutory requirements for penalties first asserted in the answer. *See Roth v. Commissioner*, T.C. Memo. 2017-248, 114 T.C.M. (CCH) 649, 652 (finding an associate area counsel's signature on an answer sufficient), *aff'd*, 922 F.3d 1126 (10th Cir. 2019).[6]

To reflect the foregoing,

*An order will be issued granting in part and denying in part respondent's Motion for Partial Summary Judgment.*

---

[6] Three weeks after asserting in his Objection that the IRS made "no attempt to value the easement," petitioner issued informal discovery asking whether the IRS had attempted to value the easement. Petitioner then issued formal discovery directed to the same point, to which respondent objected. Because the information sought (i.e., whether the supervisor attempted to value the property or the easement) is not relevant to any issue in this Opinion, we need not further address this discovery dispute. *See* Rule 70(b); *see also Estate of Goldstein*, T.C. Memo. 1986-599, 52 T.C.M. (CCH) 1244, 1246–47 (finding taxpayer's discovery request irrelevant when the information sought would not affect the outcome).